# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | |
|---|---|
| In the Matter of the Personal Restraint Petition of | No. 78894-9-I |
| KYLE CHRISTOPHER BUCKINGHAM, | UNPUBLISHED OPINION |
| Petitioner. | FILED: January 27, 2020 |

VERELLEN, J. — In this personal restraint petition, Kyle Buckingham seeks relief from a trial court order entered more than ten years ago revoking his suspended special sexual offender sentence alternative (SSOSA) sentence. Buckingham contends that he is entitled to a new hearing because, more than eight years after the revocation, some of his SSOSA conditions were determined to be unconstitutional or invalid. But the revocation was largely based on Buckingham's violations of sex offender treatment requirements, SSOSA conditions that were not invalidated. In these circumstances, Buckingham cannot meet his burden to establish constitutional error that has resulted in actual and substantial prejudice, or nonconstitutional error that has resulted in a fundamental defect which inherently results in a complete miscarriage of justice. We deny the petition.

FACTS

In 2007, the State charged 21-year-old Kyle Buckingham with rape of a child based on allegations that he raped his girlfriend's 4-year-old daughter.[1] The trial court convicted him after he agreed to a bench trial upon stipulated documentary evidence.

In March 2008, consistent with the recommendation in the presentence investigation report, the court imposed a SSOSA sentence with a minimum term of 93 months. The court ordered 12 months of confinement and suspended the remaining 81 months. Following the term of confinement, the judgment provided for Buckingham to be placed on community custody under the supervision of the Department of Corrections (DOC). The judgment and sentence also required Buckingham to undergo and successfully complete two years of sex offender treatment. In an appendix attached to Buckingham's judgment and sentence, the court imposed 29 conditions of sentence.

On March 8, 2009, a year after he was sentenced, Buckingham was released from jail. He enrolled in a sex offender treatment program. Less than two months later, Buckingham's community corrections officer (CCO) filed a notice of violation alleging 15 separate violations of sentencing conditions. According to the report, Buckingham violated his SSOSA conditions by using a controlled substance, Vicodin, without a prescription, leaving the county without permission, accessing a computer, accessing the Internet, having an unapproved

---

[1] Many of the underlying facts are derived from our decision in Buckingham's prior collateral proceeding. See In re Pers. Restraint Petition of Buckingham, No. 74697-9, noted at 198 Wn. App. 1060 (2017).

cellphone, viewing pornography on two occasions, staying overnight at an unapproved residence, and violating curfew. The report also alleged that Buckingham violated conditions of his sexual offender treatment contract by having undisclosed and unapproved romantic relationships and sexual contact, by accessing telephone sex lines, and engaging in sexual text messaging. Finally, the report alleged that Buckingham was suspended from his sexual offender treatment program. The violations were based on Buckingham's admissions during a polygraph examination.

A violation hearing took place in superior court on April 30, 2009. Buckingham was represented by counsel and admitted guilt as to each of the violations. With regard to the sanction, Buckingham's CCO recommended jail time followed by a period of GPS monitoring and a requirement that Buckingham reenter sex offender treatment. The State agreed but urged the court to impose 300 days of sanction time, whereas the CCO recommended 150 days. The defense agreed with the CCO's recommended sanction.

The court rejected the recommendations and revoked Buckingham's SSOSA:

> I did have a chance prior to the hearing to review in detail all of the report from the Department of Corrections. As counsel knows, when I hand down a SSOSA, I typically inform the defendant that this is their opportunity for treatment and, if they do not take advantage of it, they in fact will be going to prison.
>
> These are not technical violations. These go to the heart of whether or not he has accepted the court's admonition in terms of remaining away from pornography, following all the rules of the treatment provider, following the rules of the DOC, and it's extremely disturbing to this court that it's less than a month after he

3

was in jail for almost a year that he has some 15 separate violations.

I can't in good conscious continue to say, well, we'll give him another lengthy jail time and he will learn his lesson somehow better the second time around. I look at somebody who just doesn't get it in terms of I meant what I said. You either follow the rules or you go to prison.[2]

On May 5, 2009, the court entered an order revoking Buckingham's sentence.

More than seven years later, Buckingham filed a post-conviction motion, challenging several SSOSA conditions as unconstitutional or facially invalid. The State conceded error with respect to several conditions, and this court granted relief. In October 2017, on remand, the trial court entered an order striking four conditions of Buckingham's SSOSA in full and striking portions of two additional conditions.

Specifically, the court struck the following SSOSA conditions on remand:

6. Do not frequent areas where minor children are known to congregate, as defined by the supervising Community Corrections Officer.

9. Do not possess or control any item designed or used to entertain, attract or lure children.

18. Do not access the Internet on any computer in any location, unless such access is approved in advance by the supervising Community Corrections Officer and your treatment provider. Any computer to which you have access is subject to search.

22. You may not possess or maintain access to a computer, unless specifically authorized by your supervising Community Corrections Officer. You may not possess any computer parts, or peripherals, including but not limited to hard drives, storage

---

[2] Report of Proceedings (RP) (Apr. 30, 2009) at 6.

devices, digital cameras, web cams, wireless video devices or receivers, CD/DVD burners, or any device to store [or] reproduce digital media or storage.[3]

The court also struck the following sentence from condition No. 7: "Do not possess or access pornographic materials, as directed by the supervising Community Corrections Officer" and a reference to plethysmograph examinations in condition No. 26.[4]

In 2018, Buckingham filed a motion in superior court seeking a new revocation hearing. He argued that revocation was largely based on violations of the condition prohibiting him from viewing or accessing pornography—one of the conditions that was stricken from his judgment and sentence in 2017. Buckingham characterized the other violations as "minimal."[5] He pointed out that the trial court did not indicate that it would have revoked his sentence based solely on his violation of conditions that were not subsequently invalidated. The superior court transferred the motion to this court for consideration as a personal restraint petition.[6]

## ANALYSIS

In a personal restraint petition, the petitioner bears the burden of proof.[7] Generally, to obtain relief by means of a personal restraint petition, a petitioner must "'establish that a constitutional error has resulted in actual and substantial

---

[3] Buckingham, No. 74697-9 at 3.

[4] Id. at 6, 8.

[5] Mtn. for New Revocation Hrg. at 3.

[6] See CrR 7.8(c)(2).

[7] In re Pers. Restraint of Hagler, 97 Wn.2d 818, 819, 650 P.2d 1103 (1982).

prejudice, or that a nonconstitutional error has resulted in a fundamental defect which inherently results in a complete miscarriage of justice.'"[8] Where there has been no prior opportunity for judicial review, a petitioner need only demonstrate restraint under RAP 16.4(b) and that the restraint is unlawful under RAP 16.4(c).[9] In this case, Buckingham had a prior opportunity for judicial review of the revocation of his SSOSA, although he did not appeal the 2009 court order.[10] Accordingly, Buckingham must meet the usual standard of demonstrating actual and substantial prejudice stemming from a constitutional error or nonconstitutional error that inherently results in a fundamental defect and complete miscarriage of justice.

As to the threshold procedural issue of timeliness, the parties both assume that RCW 10.73.090 applies and take different positions as to when Buckingham's criminal judgment and sentence became final. RCW 10.73.090(1) provides that a collateral attack on a judgment and sentence in a criminal case must be filed within one year after the judgment becomes final. But we need not resolve the issues of whether and how RCW 10.73.090 might apply here because, even assuming Buckingham's petition is not time barred, he fails to establish a basis for relief.

---

[8] In re Pers. Restraint of Martinez, 2 Wn. App. 2d 904, 909, 413 P.3d 1043 (2018) (quoting In re Pers. Restraint of Isadore, 151 Wn.2d 294, 298, 88 P.3d 390 (2004)).

[9] In re Pers. Restraint of Cashaw, 123 Wn.2d 138, 148, 866 P.2d 8 (1994); RAP 16.4.

[10] See RAP 2.2; State v. Hand, 173 Wn. App. 903, 908, 295 P.3d 828 (2013) (involving untimely appeal of an order revoking SSOSA sentence).

RCW 9.94A.670 allows a "court [to] suspend the sentence of a first-time sexual offender if the offender is shown to be amenable to treatment."[11] Our courts have acknowledged that the loss of a SSOSA sentence is a "significant consequence" to a defendant.[12] But even so, the governing statute, RCW 9.94A.670(11), provides broad authority to the court to revoke a suspended SSOSA sentence upon finding violations of SSOSA conditions or failure to make the requisite progress in treatment:

> The court may revoke the suspended sentence at any time during the period of community custody and order execution of the sentence if: (a) The offender violates the conditions of the suspended sentence, or (b) the court finds that the offender is failing to make satisfactory progress in treatment.

A trial court's decision to revoke a SSOSA suspended sentence is reviewed for an abuse of discretion.[13] A court abuses its discretion when its decision is manifestly unreasonable or exercised on untenable grounds or reasons.[14] Our case law illustrates the broad discretion of courts to revoke a suspended SSOSA sentence based on any established violations of conditions of the sentence.[15]

---

[11] State v. Miller, 159 Wn. App. 911, 917, 247 P.3d 457 (2011).

[12] State v. Sims, 171 Wn.2d 436, 443, 256 P.3d 285 (2011).

[13] State v. Miller, 180 Wn. App. 413, 416-17, 325 P.3d 230 (2014).

[14] Id. at 417 (quoting State v. McCormick, 166 Wn.2d 689, 706, 213 P.3d 32 (2009)).

[15] For instance, in State v. Miller, the defendant violated a condition of his suspended sentence by engaging in a romantic relationship with a woman whose minor son was blind and autistic without disclosing the relationship to his CCO. Miller, 159 Wn. App. at 915-16. Miller appealed the revocation of his SSOSA sentence, and we concluded that the trial court did not abuse its discretion, even though the revocation occurred nine years into the defendant's ten-year suspended sentence. Miller, 159 Wn. App. at 919. And in McCormick, 166

7

Buckingham fails to allege, much less establish, that the court committed a constitutional error in revoking his sentence that resulted in actual and substantial prejudice. Nor does he identify a nonconstitutional error that resulted in a fundamental defect and complete miscarriage of justice. Instead, he suggests that the underpinnings of the trial court's decision to revoke his SSOSA are "suspect," given that conditions related to pornography, Internet and computer access, and other conditions were subsequently stricken or amended.[16]

But a petitioner's burden on collateral review generally requires more than a showing of mere "*possibility* of prejudice."[17] And, as explained, Buckingham conceded guilt as to all 15 violations. The majority of those violations, 10 out of 15, relate to conditions not implicated by the amendment of Buckingham's judgment and sentence. Six of the ten unaffected violations involved Buckingham's failure to comply with sex offender treatment and his ultimate suspension from his treatment program. The conditions of Buckingham's SSOSA sentence required him to "[p]articipate and make progress in sexual deviancy treatment" and to "[f]ollow all conditions outlined in [his] treatment contract."[18] Far from being "minimal," the repeated violations of his treatment

---

Wn.2d at 705, our Supreme Court held that the trial court did not abuse its discretion by revoking the defendant's SSOSA sentence after he on several occasions violated a condition prohibiting him from frequenting locations where minors are known to congregate.

[16] Supp. Br. of Pet. at 8.

[17] Hagler, 97 Wn.2d at 825 (quoting United States v. Frady, 456 U.S. 152, 170, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982)).

[18] Judgment & Sentence, App. A. (Mar. 19, 2008) at 2 (Condition 23).

contract went to the core of Buckingham's compliance with the SSOSA. The key to the court's decision to revoke Buckingham's SSOSA was the court's opinion that he was failing to take advantage of the opportunity for treatment provided by the SSOSA. The subsequent order amending Buckingham's sentence does not undermine this rationale.[19]

To the extent Buckingham suggests that the order revoking his SSOSA is not supported by sufficient evidence in light of the invalidated conditions, we disagree.

Disregarding the five violations pertaining to invalidated conditions, Buckingham does not challenge the court's findings that he committed ten violations of conditions of sentence by consuming drugs, having unapproved overnight visits, violating curfew, committing numerous violations of his sex offender treatment contract, and being suspended from treatment. These findings are verities on appeal.[20] Most importantly, within two months of engaging in sexual deviancy treatment, Buckingham admitted to six violations of his treatment contract and was suspended from treatment. None of those

---

[19] Buckingham's analogy to sentencing errors on direct review is misplaced. See, e.g., State v. Gaines, 122 Wn.2d 502, 517, 859 P.2d 36 (1993) (requiring resentencing where exceptional sentence premised on multiple factors and it was unclear whether the court would have departed from the standard range based on valid factor alone). The fact that the trial court did not expressly state that it would have revoked the SSOSA sentence based solely on the ten violations of SSOSA conditions not invalidated does not establish actual and substantial prejudice stemming from a constitutional error or nonconstitutional error resulting in a complete miscarriage of justice. Of course, a defendant challenging a sentence on direct review does not bear these additional burdens associated with collateral review.

[20] See State v. O'Neill, 148 Wn.2d 564, 571, 62 P.3d 489 (2003).

conditions were invalid. The trial court did not abuse its discretion in revoking Buckingham's sentence based on his violations of SSOSA conditions and failure to make satisfactory progress on treatment. Under these facts, Buckingham has failed to meet his burden to establish that he is entitled to collateral relief. We deny his petition.

WE CONCUR: